Good morning. May it please the Court. My name is Jeffrey Martins, and I'm representing the petitioner, Mr. Harjinder Singh. And I'd like to reserve about two minutes of my time. OK. If you'll just keep track of the time, it counts down. Sure. At his hearing before the immigration judge, Mr. Singh requested asylum based both on his political opinion and his membership in a particular social group relating to his family. In his decision, the judge only briefly mentioned the second ground of protection, but made no finding, no consideration of evidence, and no finding of whether or not Mr. Singh qualified for asylum based on that protected ground. The judge acknowledged the clear connection between Mr. Singh and his father when he stated that Mr. Singh had been arrested due to the police interest in his father. But the judge made no finding about whether or not he's eligible for asylum on that basis. Subsequently, the Board, in its decision, also made no analysis regarding Mr. Singh's request for asylum based on his membership in a particular social group. The Board merely stated that they agreed with the judge's finding that there was no nexus between either Mr. Singh's political opinion or his membership in a particular social group. I think the Board's analysis in this case basically comes down to a finding that because there were other reasons for the persecution, then it could not have been on account of a protected ground. And I think this very clearly violates the Ninth Circuit's decision in Prusamova v. Mukasey, as well as the regulatory language itself of the REAL ID Act, which allows for mixed motives or multiple motives in determining whether or not there is a protected ground. So, you know, the language, I think, is a central ground, not the central ground. Right, a central ground. Review the bedding for us. What is the evidence that tells us, if taken as truthful, which I think we have to at this point, that gives us the proper nexus? Well, for a particular social group, it's clear that when Mr. Singh was arrested, the police talked about his father, asked him where his father was, and was really interested in trying to detain his father. Excuse me, counsel. What is the precise social group that you're arguing for that ground? You're not arguing – I don't hear you arguing imputed political opinion, which might be more plausible. But what is the precise social group? Mr. Singh's attorney at the individual hearing before the immigration judge stated that it was his family. I, again, really articulate it any more than that. But both the judge, the immigration judge and the board recognized that that was a requested ground and didn't consider it one way or another whether or not it had particularity or social distinction or any of those other requirements. They just said there was no nexus between those two. And I think their failure to consider that protected ground really leaves the court with little choice about whether or not to remand this case because it's not ripe for review yet because it hasn't been considered. As for nexus to a political opinion, the BIA stated that the police motivation for persecuting Mr. Singh was personal and not political. And Mr. Singh maintains that the personal problems that the police had with him were related to his political activities and his political opinion. The finding by the board really ignores both direct and circumstantial evidence. There's plenty of circumstantial evidence that Mr. Singh and his father were both politically active, engaged in political activities. Let me ask you just to break down the two arrests. The 2005 arrest, I think it was, when they were looking for your client's father, I mean, that seems like that just doesn't help you. Do you agree with that? Well, that one I think is much more related to Mr. Singh's request for asylum based on his membership in a particular social group. Got it. Okay. Because they were searching for his father. And but for that relationship, he would not have been arrested. Okay. But in terms of his own political views being the motive, they never questioned him about your client about his own political views. No. No. I think he did state that the police wanted to stop his father's activities. Right.  So the 2007 arrest seems like the more promising one from this, from your client's standpoint. But there's. It's for the political opinion. Right. Right, right. We're not going to reach. At best, we're going to remand on the social group. That's the best you're going to get from us on that. Yes. Right. So let's put that aside. Okay. The 2007 arrest, though, it just seems like it was very much focused on we want you to dismiss this complaint that you and your mother filed against us, the police.  Right. So, again, was there any questioning of your client about his own political views during that arrest? Yeah. That is in the record, Your Honor. He was questioned about his political opinion. The police also made derogatory comments about the political goals of his political party. And I think this is where some of the circumstantial evidence also comes in. Mr. Singh and his father were both motivated in part by police abuses in order to join a political party and engage in political activities. And so some of the complaints that they filed against the police, I think, could be really understood as part of their political views and their political activities. So when the police were asking them about this complaint, it's really a reflection of the police motivation of disapproval of their political activities and the political goals that they have manifested in their activities. And the police at one point, according to his testimony, call him a big Khalistani, which suggests that they believe that he is engaged in political activity of which they disapprove. Yes. If we didn't have evidence that the police believed he was a, quote, big Khalistani engaging or believing in free Khalistan and so on, would there be a proper political connection or a protected ground if the only thing that we had was very strong suspicion, maybe even well-founded suspicion, by him and his mother that the police had killed the father? They bring complaint against the police, and the police do these bad things to him in an effort to get them to withdraw a fully legitimate complaint. Would that be a political – would that be a protected ground if we didn't have the Khalistan in the background? Well, I believe so, Your Honor. And I think that – And so why? Because I think complaints about police abuses are inherently political. I think we've seen some of that in the United States this summer with some of the incidents in Ferguson where there was quite a bit of political uproar over people complaining about the police treatment and police conduct in those areas. And I think that's what fundamentally the Board is mistaken about in other decisions where they've held that police complaints are personal in nature and not political. But we have two – we have two cases that at least I can think of, I think that the government relies on, the Pagoyan case and the Molina-Morales case, which seem to directly contradict what you just said, that there are circumstances in which a complaint against the police is purely personal. Right. And I don't think that's correct. But I think that there's – Well, just talk about the two cases then that I mentioned. Okay. I mean, I think that this case is very much easily distinguishable from those cases because there is clear evidence of the police motivation being political. In addition, those other cases did not involve the applicants for asylum being involved with any kind of political activities. There was only the complaint against the police, and there was nothing else to indicate that the police were motivated by a political opinion or any other political activity. And that's very much different in this case. So I don't think those are controlling here. Okay. You're down to just about two minutes. Yes. So we'll hear from the government, and then you have a chance to respond. Sure. I appreciate that. Thank you. May it please the Court, Walter Bocchini for the respondent. Attorney General, can you hear me okay? Yes. Thank you, counsel. Keep your voice up. I think the other two can hear. I'm deaf. All right. Your Honors, in this case, I think we have to give them up. Counsel, I don't have a day sheet for some reason. Which entity are you with? Are you with the DOJ from D.C.? Yes, Your Honor, I'm with the Office of Immigration and Litigation in D.C. Okay. Thank you. Your Honor, two things to keep in mind, of course, are the elevator burden of proof under the real ID and discourse deferential standard review. Now, the evidence in this case, as the Board found, points to two motives for what happened to the petitioner in India, neither of which involves a protected ground, that being locating his father in 2005 and getting the complaint that he filed against him dismissed or withdrawn in 2007. Now, according to his own testimony, the actions of the police do not reflect any concern for his political opinion, imputed or otherwise. They had him in 2005, and they released him. They ignored him for two years after that. Then only when he filed the complaint did they come after him. According to his testimony, they forced him to withdraw the complaint. Once he withdrew it, they released him again. So the actions of the police don't reflect any sort of concern for his political opinion. Well, let me think about it. If I look at the evidence in a different way, I think it does suggest that they were interested in his political opinion, even as to the first one. They're after his father for forbidden political activity, which if they were persecuted, if they were after the father and abused the father, that's going to be a protected ground for the father. And the son is protecting the father. And I think if I'm the police, I might suspect more than mere sort of filial loyalty. I might suspect political agreement as a reason for protecting the father. That's a little bit weak, but there's some reason to suspect it. Now, the petitioner and his mother think that the police killed him. Now, the reason, why would they have killed him? Well, their suspicion is they killed him because of his political viewpoint, because he was a Free Palestine person. They then bring a complaint against the police for having killed him on a protected ground. The police, understandably, given our characterization of the police that we're getting now, which at the moment I have to take at face value, the police want them to withdraw the complaint. They call him a big Kalistani when they have him in custody, and they mistreat him. There's a fair amount of politics in there. That's not merely personal. They were after the father because he was after Free Palestine. The son won't let him have him, won't tell him where he is. When they are accused of killing the father, who had political opinions of what they just approved, they take him to custody and beat this man and tell the complainant to withdraw him. How can you say there's no political connection? Well, Your Honor, there's no political connection to what happened to the petitioner. We're not saying that what happened to the father was involved in political activity. I think that this Court's case in Sanga and Sharma are on point. Both of those cases involve fathers who were involved in political activity. In the Sanga case, the father was a leader of a political organization. He had criticized another organization, the BTF, and the BTF came after the son. But even though the father had been involved in political activity, that wasn't sufficient to establish a nexus to protect the ground, because the evidence showed that the police came after the son to recruit him and to stop him from helping his father. So what do you do with the police when they have him in custody the second time? They call him a big Khalistani. They don't say, you know, this is a totally unfounded complaint and we don't want this to go away. They said, you're a big Khalistani. Withdraw the complaint. Well, Your Honor, I think that's an isolated statement that shows just awareness and it's not compelling evidence to establish a nexus to protect the ground. And I would point to this Court's case in Parasumova. And again, I would point back to the Sharma case. Parasumova said that while a persecutor can be aware, there's evidence the persecutor is aware of the protected trait, that's not sufficient, necessarily sufficient to compel a nexus finding on the real ID. And in Sharma, there was evidence in the record that the Sharma had been persecuted on a counterprotected ground. But the Court noted that isolated statements in the record is not compelling evidence to establish motive. Even though in Sharma, the father, he had had a complaint against him. No, I'm sorry. In Sharma, the father was, he was researching Sikh separatists and he was going to publish a book that was going to outline police misconduct. And the police came after the son. And the Court said, well, the evidence here overwhelmingly points to that, points to a nexus that, for a reason, that the police came after the son because they wanted to stop publishing of the book, not because of the son's political opinion. And again, there was evidence in the record that it was on a counterprotected ground, but the Court said it was an isolated statement. So I think the big Khalistani statement in this record, the way it occurred, it didn't tie back to the father's political activities with respect to this letter writing campaign that he was engaging in. Counsel, isn't it in the record that they both were members of the al-Khali, al-Khal party, the Free Khalistan Party? I'm sorry, Your Honor. Are they both members of the Free Khalistani Party, the Khali, I don't know if I'm pronouncing it correctly, the Khali Dao party? Yes, I just call it the Mann Party for simplicity. You call it what? The Mann Party, M-A-N-N. I think that's mentioned sometimes in the record. But, yes, they are both, according to respondents to petitioner's testimony, they are both in the party. I don't believe that that's compelling evidence to show a nexus for protected ground, though. Are we supposed to take, so on this record, the IJ found, made an adverse credibility finding, but then the BIA, which decision we're reviewing, assumed he was credible. So are we supposed to assume he's credible? Yes, Your Honor. We're assuming credibility in this case. Okay. But even assuming credibility, the fact that he's in a political party, again, at most it shows awareness. It doesn't necessarily compel the evidence that the police has persecuted him on a counterprotected ground. But what the BIA found was that it was a personal vendetta. And I just don't see that. I don't see it being a person at all. I mean, it's definitely connected to the complaint about his father disappearing, right? But that is a personal dispute. I think that's what the board said. And it's a personal dispute because it doesn't have a political dimension to it. It doesn't have an institutional dimension to it. It's a complaint against the police, and the police are coming after him. Right. But let's not characterize it. Let's not characterize it. Let's just look at the fact. The fact was he filed a complaint because the police had disappeared his father. That's the fact, right? No, Your Honor. He did not develop the testimony to show what kind of a complaint this was. All he said is they filed a complaint because, according to his testimony, the police had a hand in the accident that killed his father. And that's where he stopped. There was no other evidence to develop what exactly, what's the nature of the complaint. There was no evidence that he showed, that he testified about what, why he believed the police had had a hand in this accident. There was just really nothing else there. It's a very broad claim, very vague, and it's not sufficient to show that the police were coming after him for anything more than getting the complaint. I have to be honest with you. I don't know what to do about this case because, you know, having the IJ make an adverse and then the BIA saying, assuming credibility, and then you have to take all those facts, I don't know if perhaps remand is the best thing to do under these circumstances. I don't believe remand is the best thing to do because here the agency found two specific reasons, neither of which is a protected ground. Now, he could have developed a whistleblower theory below that seems to have been like the best, his best case. He didn't do that. He didn't do that until his reply brief. So that issue was waived and not exhausted before the agency. And because he never went forth on that theory, he didn't develop the record to establish that the complaint that he filed against the police was institutional in nature, was, you know, there was some sort of systemic, multiple layers of government, multiple government actors involved. All there is is a very vague, narrow claim that I filed a complaint against the police because the police had a hand in my father's accident, and that's where he stopped. And that's not and certainly not enough to develop any sort of whistleblower claim. And once you move on to the next slide. Kagan. But you're passing over fairly quickly the prior arrest of the father for our current purposes, assuming credibility, the severe mistreatment of the father, beating, comes out bloody. I mean, the guy's been very badly hurt while in captivity. The father is now, according to them, killed in an accident in which the police had a hand. I mean, this is not sort of just coming out of the blue. Some guy gets killed in an automobile accident and maybe the police cruiser hit him. No. They've been after this man. They had been beating, maybe depending on how you characterize it, torturing this man. He now turns up dead. His wife and son suspect that the police had a hand in killing him. And given the background, it doesn't seem that to be a totally off-the-wall suspicion. And then when the mother and the wife and the son file a complaint against the police, they beat this guy in order to get it withdrawn. It's circumstantial evidence, Your Honor. That is circumstantial evidence. But it's not compelling, necessarily compelling evidence to establish a nexus when there are a lot of evidence. He was asked a lot of times in the record, five, six, eight times in the record, why did the police arrest you in 2007? And all he said, because I filed a complaint against the police. That's all he said. There's nothing else there. I mean, if we look at the timeline of the events. Because I filed a complaint against the police based on my and my mother's suspicion that the police had a hand in his death. Well, then, Your Honor, then you're under the Pagayan case that we 28J this Court that made it clear that filing that retaliation for trying to expose a criminal event is not persecution on a counterprotective ground, Your Honor. Counsel, that case is three years old. Why is it properly the subject of a 28J letter? It was issued after we wrote the brief in this case, Your Honor. So that's your criteria for 28J is, like, if you pick up the brief three years later and something's happened in between? Because that's not my understanding of 28J. I apologize for not 28J-ing it sooner, but it's just the nature of how this case develops. I didn't start reviewing this case until about a month before the argument. That's what happens, right? I apologize. It's all right. No, we would bind it anyway, believe me. Oh, I'm sure you would, Your Honor. Yes, it's all right. Don't worry about it. Okay. Any further questions from the bench? Okay. Thank you. Thank you. Thank you. I think only a lawyer could say that asking someone about their political opinion and making fun of their political opinion means that they're not interested in that political opinion. I think the clear facts of this case demonstrate that there is direct evidence that the police were motivated by Mr. Singh's political opinion in persecuting him. And that really is the best evidence that he can present is what the police actually said. That's the best evidence of their motivation. There's plenty of other circumstantial evidence to demonstrate the nexus to political opinion, but the best evidence is the direct statement. But besides the big calisthony statement, what else is there in terms of direct questioning of him about his own political views? It wasn't really described a whole lot in the record. There was testimony that he was questioned about his political opinion. They just didn't say, you know, what questions were you asked about your political opinion. But that is in the record. Where? I don't remember seeing anything other than the big calisthony quote. So I'll take a look at whatever you tell me to look at. It's right at the same point. Let me see if I have the administrative record here. I know where the big calisthony thing is. It's just right there? That's the only place to look? Yes. It's the same section of the transcript. That's fine. So I think, you know, in the final analysis, the Board's decision here disregarded primarily a protected ground, and I think there's no way around that. And that also distinguishes this case from some of the others that counsel mentioned and that requires the Court to remand it. They also disregarded all the political evidence involved in this case in order to make a determination that the persecution Mr. Singh suffered was personal. The Paganian case also is clearly distinguishable because there was no political activity by the petitioner or the applicant for asylum in that case either, and no indication that the police had asked about his political opinion either when he was being pursued. So I think that this case is really distinguishable from those, and the Court should remand this petition for reconsideration. Okay. Thank you very much. I thank both sides for their arguments. Harjinder Singh v. Holder, 11-70612, now submitted for decision.
judges: Wardlaw, Fletcher, Watford